The next case for argument is 15-1020, Prolotech versus Scentier Technologies. This is 15-1020. Don't sit down, Ms. Harner, we're ready for you whenever you're ready. Good morning. I've reserved three minutes for my rebuttal time. May it please the Court. A lot has happened since the briefing completed in this case, and I'd like to begin by addressing one of these recent developments, this Court's decision in Microsoft versus Proxicon, which involves two issues that are relevant here. First, the Proxicon Court's discussion of the proper framework for analyzing the broadest reasonable interpretation of a claim in IPR confirms the Board's legal error here in adopting an unreasonably broad construction of the term outlet including a second chamber. Second, the Court in Proxicon expressly left open the question of whether the Patent Office can properly require, as it did here, that a patent owner who wishes to amend its claim during IPR must show patentability not just over the art involved in the trial, the art of record, but also the art not of record but known to the patent owner. I'd like to begin with that claim construction issue and then return to the motion to amend. The claims here require a reservoir that is partially filled with liquid with a headspace above, and the headspace is in fluid communication with an outlet that includes a secondary chamber through which the gas in the reservoir passes from the headspace to the outlet to exit the scent-diffusing device. The Board's construction of the claim, outlet including a second chamber, is erroneous because it reads the word chamber out of the claim. I understand your argument and I appreciate it with regard to chamber. The concern I have is that I guess it was other counsel below, but whether or not those arguments were actually made to the Board. Yes. Whether the question of how to construe chamber was in play below. Of how to construe the word chamber? Yes, the counsel below argued the specification support, and we can get you the citation for that, that the specification shows and describes a chamber with a transverse bulkhead and that that requires some level of physical separation between the headspace and the outlet. And that was in the context below of distinguishing in the anticipation context the simple outlet in the Benalocuja reference. And we noted in our brief that in the prosecution history, that second chamber outlet limitation was added to the claim to overcome just such a prior art reference, which was a canister with a simple exit opening. And in the joint appendix, the language of that amendment. But below, the focus on the transverse bulkhead, the specification explanation that the outlet had some structure to it before the gas can escape the canister. In your concern, just to go back to an issue that could be dispositive with respect to the right to amend, is your concern primarily that with the burdens, the placement of the burdens, and the need to represent and establish that the amended claims were patentable and where the burden of proof and the predominance was? Or is it that the next stage, that had the amendment been permitted as you had requested, that it would have solved all of the other problems? I think our concerns are both. We did address in our brief that we believe the burden was improperly placed on the patent owner in light of the statutory language that says very specifically that the burden of proving any proposition of unpatentability is on the petitioner. But we do understand that the Proxicon case found that it was proper for the patent office, at least at some level, to require the patent owner to make some showing. So that's the first question. We do stand by the briefing on the statutory interpretation. But more specifically, we see in Proxicon, that's right. But in footnote 4 in Proxicon, this court specifically noted that it was not reaching the question of whether it's possible, as the board has interpreted the statute and its regulations, to require the patent owner to show patentability over both the prior art involved in the trial and all prior art outside the trial. And what is the practical matter? Was it an issue here that was outside of the record in terms of prior art? There were two references in the prosecution history that the petitioner reached back to in its opposition to the patent owner's motion. So procedurally, the patent owner here filed a motion to amend and in its motion proved patentability over all of the art of record in the trial, both art that was in the petition and not instituted, and art that was instituted. There's no dispute here that the patent owner did that in their motion. But as the judges in the board in the oral argument said, why did they even need to look past the motion to read the opposition? They said that a couple of times because the motion, they said, was deficient, even though it did that. Procedurally, what happened next, the petitioner came in with an opposition to that motion and they introduced additional references from the prosecution history. So that's outside of the trial record and said that these could be combined to fill the gap that was still left over the art of record. And in the reply... This was in the prosecution history regarding the art of record. That was in the prosecution history of the patent. Right, okay. So it was known to you, obviously. You collected it. Yes, that's right. And there's no dispute over that. But if you read the statutory framework for an IPR proceeding, I think that is improper. The board's regulation is improper for two reasons. It's improper because it conflicts with the statutory framework, which cabins the process of an IPR to prevent what the patent office says will be unexamined claims floating out of all of the art that they know. And that's not correct under the statute. If you read the IPR statute, it starts, of course, with an issued claim. I'm sorry to interrupt, but I guess there's a leap here, and I'm just not getting it, which is that issue of prior art outside of the record, but then you're sort of equating that and saying that the prosecution history of the patent is equivalent to all prior art outside the record? The prosecution history is outside the record in the trial. The way the IPR statute works, you start with an issued patent, and when you want to amend the claim, the statute requires you can only narrow it, and you cannot add any new matter. So within that, we've got a claim that's been examined fully by the patent office during original examination, and it's been granted and it's been examined over all art. Yes, we can skip that part. So there we are. So we're at this narrowing. We're trying to narrow. So the question really is, is it narrowing enough to remain patentable? And the IPR statute specifically said what the issue is to be adjudicated, and it's adjudicated, not examined, right, in the IPR world. And the statute requires we can't take away this presumption of validity and reopen the patent for anything. It says specifically that a petition cannot be considered unless there's specific grounds that are, and the statute requires the grounds in the petition have to be in writing and described with particularity. And so they've identified a problem. We're not talking about motions to amend now. No, I am, actually. Okay. Because I think it goes to the propriety of the patent office's requirement that you go back and look at all of the art that the patent owner knows. That is improper in an IPR context where the Congress has said the issue to be adjudicated, again, it's not an examination. The issue to be adjudicated is the grounds that the statute requires are in the petition, and then the petition may not be instituted, according to the statute, unless those grounds, the specific art that is raised in the petition, unless those grounds as explained in the petition rise to the level of a reasonable likelihood. And that is the way that the statute patterns the issue for decisions, the adjudication of the patent. And it makes sense the patent office has a regulation that requires that an amendment respond to a ground that's involved in the trial, which makes sense if you think about the statutory framework. We have an issued claim that's patentable. They identify a problem when they have the grounds in the petition, and then the patent owner has an opportunity to amend. And so they have an opportunity to fix that problem. And the patent office regulation makes sense to the extent that it says your amendment has to address something that is involved in the trial. That's the phrase in the patent office reg, but in the gloss they have added through idle free, and in our case, they're saying not just the ground in the trial, but also all of the art that you know about. That goes back to the prosecution history, perhaps any other proceedings involving the patent, and that explodes the adjudicatory nature of the amendment process in the IPR back to an examination, which is exactly what the patent office has even said, and that requirement to distinguish art that is not involved in the trial conflicts with the statutory framework and is also an impermissible interpretation of the patent office's own regulation, which, while it deserves some deference, this court noted in Proxicon, if the interpretation, as idle free is here, of the patent office's own regulation is inconsistent with the statute, it cannot stand. And that's the interpretation that was applied here, and at a minimum this patent owner deserves a chance to go back. Okay. Can I just get clear? We've had a lot of cases this weekend. Yes, I understand. So I may be confusing this with another case, but I thought the board justified their denial of a motion to amend because you had not shown that the proposed amendment would be patentable over the two pieces of prior art of record. So, no, this was not art in the record, and I can point you to where this is. Well, the two pieces of art in the record, and I can't pronounce them for the life of me. Benalucuja. Okay. And Cicada are the two references. But Benalucuja was in the record. Benalucuja, yes. Exactly. And in the motion to amend. The basis of the invalidity. Yes. We argued the difference was that Benalucuja did not have a permanently joined reservoir and diffusion head. Cicada is the one that was not, that was in the prosecution history. No. So Benalucuja and Cicada were in the record in the trial. They were in the petition. They were properly in the trial. Okay. So why don't you tell us, show us in the board decision where it went awry and going beyond that. Sure. So if I can take you to they begin discussing our motion on A28. Right. Is it all red? So it's all red and poncelet. So those two references were introduced into the trial by the opposition to the motion to amend. Those were not in the petition. They were not part of the trial until the petitioner's opposition. So in the motion to amend, the patent owner distinguished over Benalucuja and Cicada, the two pieces of art that were instituted and were in the grounds, and also all of the art that was in the petition but not instituted. So the patent owner distinguished patentability over all of the art involved in the trial, which is what the patent office regulation says a motion to amend needs to do, address all of the art. Okay. But you're saying this art was in the opposition? So this became, yes. So all red and poncelet became part of the trial for the first time in the opposition to the patent owner's motion to amend. And the patent owner addressed those additional references in its reply to the board, including providing reasons why they would not be combinable, in particular regarding the addition of the all red reference. So those pieces of prior art were in play in the adjudication of the ICR, right? That's right. But if you read the way the board analyzed this, they were stopping at the opposition. The board here said that we did not. If you look at A30, the middle paragraph there. Right. That's exactly where I am. Okay. So patent owner's motion to amend does not address all red, poncelet, or any other prior art reference that may also teach this very limitation, which it contends that it would render it patentable. Okay. So your complaint, the essence of your complaint about where the board went awry in this case was that they also included the reference to, or any other prior art reference. Yes, and that they stopped there. Two errors. The first is that they required us to go farther at all, because that really conflicts with their own regulation that says an amendment has to respond to a ground involved in the trial. But here it became involved in the trial. But when we did that, the board mistakenly did not look at our reply. If I can show you, actually, at A2063, if you have it with you. During the questioning at the board, Judge Lee of the PTAB specifically said, at the bottom of A2064, why do we even need to consider the opposition? The board stopped with the motion and said, your motion only addresses the art of record. Why do we even need to look beyond that? Because under our gloss in Idle Free, the motion has to introduce all of the evidence outside of the record too. So they didn't even, and he says it again as he goes on into, he mentions specifically Idle Free at the top of A2065, and then on A2066 he says, that's what we wanted you to know. You didn't tell us in the motion. It looks like we really don't need to move over to the opposition because it's your burden of proof, and essentially we don't know anything about the art because you didn't tell us. And he's talking there about the motion. Let's accept, for the sake of this discussion, that it is not inappropriate, the statute, which requires then the applicant to come forward and to distinguish as far as any changes in the claim. Is your sense that the ultimate burden is also shifted, and that's improper, or that, in fact, after all of this is in, there is still the obligation on the office, as far as the statute is concerned, to say that the applicant is entitled unless? The office is the one that is ultimately charged by the office to determine patentability. And so the office still bears the ultimate job of being a fact finder and determining patentability of the new claim added in amendment. As far as that burden shifting, I think in the PTAP practice, it does make some sense to have, if the board had followed the procedure and actually paid attention to the opposition and the reply here, which it did not, I think it makes sense within the statute that the motion to amend has to address all of the art involved in the trial, which is actually what the PTO reg says. But they have blown that out by the Eitelfree decision and applied here and said, no, no, your motion has to then go on and talk about all of the other art, too. But if instead of doing that, they actually followed the language of the reg, which says your motion to amend has to address all of the art in the trial, so the things in the petition, the things that we've been talking about in briefing with our expert testimony all through the trial. Then the petitioner has a chance to come in. So if the patent owner bears that initial burden of production, I guess we can call it, then the petitioner has an opportunity to come in and bring in other art, just as they have had throughout the trial and as they did here. And they came and said, well, no, it's still not patentable because here are two additional pieces of art. So those two new pieces of art then come into the trial and the patent owner has a chance, as they did here, to show why maybe there's a missing limitation, maybe they're not combinable, but to present an additional case for why the claim is still patentable. And then the statute places the burden on the patent office to issue a final written decision with respect to patentability of that amended claim. And that way they'll have... I just want to understand something. You did file a reply to their opposition to your motion to amend, right? We did. And at page 829, the board in ruling on the motion to amend expressly cites it and discusses it and therefore considered it. They do, but then on 30, they say the motion to amend does not address them at all. They say the motion to amend does not address all red consulate and any other prior art reference. They drop a footnote there that suggests that the patent owner has made arguments, footnote 9 on A30, but they stop and say, well, you maintain there's other limitations that are missing that provide patentable distinctions, but we have already addressed those in the context of the original claim. But what they didn't address was the patent owner, in addition to saying there are other limitations, also argued why all red and Benalucudra would not be combinable. And that is nowhere here. And the board really was focusing at the end of that paragraph... I guess what I think I'm hearing is that you have two somewhat distinct objections to the way this panel of the board handled the motion to amend. One is the assignment of the ultimate burden of persuasion. But apart from that, even if putting that aside, that the board did not address arguments that you made in your reply that bore on the patentability of the amended claim. Yes, and then I would add a third error, which is they did not... They held the patent owner to a standard which is unreasonable under their own regulation, which was in the motion itself, as Judge Lee said during the argument, if you don't make that entire case regarding all of the art known to you in your motion itself, why do we even need to look at the opposition? Okay, can I just ask another question whose ultimate, I guess, point is why is any of this relevant? That's not... Oh, good answer. I know, it needs some build-up. Your motion to amend addressed only the first claim construction issue. It didn't address... It didn't do anything about second chamber or anything like that. It just wanted to replace the word mounted with permanently joined. If I thought, and I don't think we have time to discuss it at this point, but I know you do, that the principle prior art reference included a joinder of the top to the bottom as permanent as the ones described in your spec, then none of this would matter because it couldn't possibly change anything to substitute the words permanently joined with mounted, and then none of this discussion matters. But the board found that it was not permanently joined. They found that that was a distinction. Nobody here has argued that the amended claim does not overcome the art involved in the trial until those other references were... Where did the board say that... That Benelicuja has a separable... top than a kind... Well, it had a non-permanently joined top. Benelicuja had one with screws covered by something so that... Yes, because it was separable, that's right. Right, but it took a lot of work. The manufacturer would have to take off this ring and take the screws off, and it might not be, in fact, any different from using a solvent to dissolve an adhesive. But it was different. It was our own prior art device, the patent owner's own prior art device, and what they found was that by letting the diffusion head and the reservoir separate, there could be contaminants or dirt, that it could be messy to open and refill in a hotel lobby or something, and so they made the permanently joined device that is claimed in our patent. I'm sorry, so... You need a cite to add to the... Does the board say that the Benelicuja prior art device had a non-permanently joined top? So we have A18. Yes, that's what I'm looking at. Okay, so that's where the board found anticipation, and the reason that they said was because the claims do not require permanent joining, so therefore Benelicuja anticipates. Let me find... I have my... Yeah, so it's sort of right under the number one there on A18. As you... Actually, as you understand, that's not the point, right? They could find it because it's not required. I think you asserted that they actually found that it was not permanently joined. This doesn't say that, so the question is did the board find that? Let me see. So the patent owner admitted it. They conceded that it discloses a diffusion head removably attached to the liquid reservoir, and that is, I think, when you read that sentence and what the board did, and when they went on to their anticipation analysis, they said specifically that Benelicuja had the separation, but our claims didn't... I'm sorry, Benelicuja didn't... Our claims didn't require the separation, but the difference here is the record before the board had the motion to amend with additional art. The patent office, when it rejected the motion to amend, was not rejecting it based on the showing that the patent owner hadn't shown the amendment patentable over the art in the trial. Were they... I think we need to move on. Okay. We'll restore three minutes to rebuttal. Thank you. And the two from the other side. May it please the court, Clay Holloway with Rene Wainwright on behalf of Apple East Scent Air. In the IPR below, Scent Air presented ample evidence showing the invalidation of the original two claims in the 683 patent. The PTAB's grounds for the invalidation of the original two claims were anticipation on the one hand and obviousness on the other hand. We've spent a lot of time this morning talking about the motion to amend, and there was focus on the Benelicuja reference and the court in the PTAB below's anticipation analysis. But that's critical, isn't it, because the amendment would have narrowed the claims and the invalidation is based on the breadth with which they were initially granted. So if we start with the mounted reference, Your Honor, or mounted limitation, which is what we're talking about, the last little exchange dealt with whether or not Benelicuja taught a mounted diffusion head to a reservoir commiserate in the scope of the original or amended claims. The reference at A18 is when the anticipation analysis is taking place. That's clearly focused at the original claims. Now if we were to move into the amendment context and focus on whether the art of record in the underlying petition rejections, Benelicuja as an anticipatory rejection, or Benelicuja plus Takeda as an obviousness rejection, we need to focus the analysis on whether permanently joined in the context of the broadest reasonable interpretation of what that would be in light of the specification then overcomes the anticipation rejection or the obviousness rejection. I would submit that there was no finding that Benelicuja, or that the 683 patent requires a permanently mounted so that it could never be removed. That would be directly contrary to the broadest reasonable interpretation of that term. Even if we were to add permanently joined to the claim, as was proposed in the amended claim, we would need to look at the specification to see where that was supported. We would find that the specification describes disassembling the diffusion head from the reservoir. That's exactly what was taught in Benelicuja. Benelicuja goes so far as to teach a tamper resistant diffusion head mounted to a reservoir. So that if someone did try to remove it, you would know. There would be some kind of irreversible change, for example, to remove those two. So the proposition that the underlying rejection of anticipation, and most importantly, obviousness were overcome by the motion to amend, putting aside the Allred reference, I would submit is not there. The board would have been, and in its analysis, spent very little time talking about the Allred decision. And I believe that is because it would have been impossible to overcome Benelicuja plus Decatur in the obviousness context, even if you added permanently joined. Did the board make this about the reasoning that you just articulated in explaining why it was denying the motion to amend? I would say they didn't make that expression, Your Honor, but when they are addressing the motion to amend, and specifically the questions that were pointed to from the hearing below about why do we need to look past the motion, I think there's two ways you could read that, and there's two ways that it happened. The question is, well, you didn't bring us the prior art of record. And we focused a lot on the one sentence from the board's order that says, does not, where the suggestion is that you had to overcome all of the prior art. But the last sentence of that paragraph on A30 is the motion does not demonstrate that Claim 3 is patentable over, for example, Benelicuja in light of Allred. But they denied the motion, and yet on what basis do they consider the substance of the motion if they refuse to permit the amendment? So, Your Honor, I would suggest that in this case that's really a distinction without difference given the way that the procedure works for a motion to amend. They say you can't amend your claim. Go away. And yet you tell us, or actually the board tells us, that the amendment might or might not have succeeded, but they don't allow you to amend it. So on what basis are they deciding the substantive question of whether the amended claims are patentable? In this instance, well, in all instances, when a motion to amend is filed, there's not a pause in the IPR proceeding for the motion to amend to be decided and then restart the IPR process in terms of adjudicating the validity of the newly amended claim. The procedure requires that all of this be addressed in the final written decision. So patent owner comes forward with their motion to amend, says, here's the evidence that we think shows a narrowed claim in response to the rejections of record. It's then on to the petitioner and the office to say, this is why you're not entitled to the amended claim, not only because of what you've said about the art of record in the petition that's underlying the inter-party review, but also, here are pieces of prior art that in this instance were fully known to protect. That's exactly what you said. They say you're not entitled to the amended claim, but they don't allow you to amend the claim. So on what basis can they decide whether you're entitled or not? So again, Your Honor, in this instance, when all of that gets reported, and under the regulations, they're required to put all of that analysis into the final written decision. And the reason is that they just- I'm not sure. Let me, because you're confusing me more than I was. Is it your view that when they file a motion to amend, the PTAB panel, in deciding whether or not to accept or reject that motion, part and parcel of that, the essence of that, is determining whether the amendments withstand patentability or not? Absolutely, Your Honor. That's the requirement that's put on. The 4240 of the CFR section here requires that they- So it's your view that when, by denying the motion to amend, the board wasn't saying, we're not even going to look at patentability. That they did an analysis of whether or not they thought the proposed new amendments were patentable. Is that what your position is? Yes, Your Honor. I think that last sentence on A30 says that it would not have been- you have not demonstrated that Claim 3 is patentable over Finna closure in view of all writ. It doesn't say you didn't meet the procedural requirements for presenting a new claim. The relief that the patent owner is asking for here is that any time I'm faced with an inter-parties review and I file a motion to amend that narrows the claim and addresses an issue of patentability that's in the petition, at that point, I'm entitled to a new claim. No, no, no. But in fairness, I mean, I appreciate what you say and I may ultimately agree with you say that you can find parts of the board's analysis that may be sufficient. But it is- but you're not trying to defend that first sentence of the paragraph in A30 that we were looking at where it seems, taken out of context on its own, the board is requiring that the patent owner's motion to amend address any other prior reference that may teach the very limitation. An unlimited universe. But I would propose, Your Honor, that's not what they intended to suggest. They're fully aware that the procedure here is that the patent owner will file its motion to amend and present its argument and the petitioner will respond. And the petitioner is teaming up, in essence, with the patent office to come forward with the protecting of the public interest here to suggest this is why your new claim should not be allowed. And the final written decision here would address both the fact that, okay, well, here was the art that you needed to cover, and, substantively, you're still not going to overcome then a collusion as an obvious misreference combined with the admitted teaching in all red that patent owner admitted taught a permanently joined diffusion head to a reservoir. So they're really giving an advisory opinion to the applicant saying that if we did allow you to amend the claim, you wouldn't get the patent anyway. Therefore, we're not going to allow it. I don't think that's an advisory opinion. I mean, the burden here is that you have to be able to demonstrate I'm entitled to a claim just as you would in the examination context. If I present you with evidence to suggest that I'm entitled to a patent because I don't see anything in the record that demonstrates it's not novel or non-obvious, but then the patent office comes back with the evidence to say, no, no, here it is taught in the prior art. No, that's not quite accurate. You would file the amendment. So the amendment would be there in the record, and then prosecution would proceed on the amended claim. You're not allowed to do that after filing, after grant. I think the key to your question is you would, in the examination context, when I put in a new amendment, I would then have a new round of examination that continues. In the IPR context, this is a one-time opportunity. If it's new matter. No one here has said this is new matter. This is a narrowing amendment, not a broadening amendment. Simply because I've narrowed the amendment. I'm not sure I'm clear. In your view, is the way the process works under the AIA that you file a motion to amend, if the board grants the motion to amend, does that mean it's said, it's in essence said, your amendments are patentable and you're allowed to amend your claim? Is that the way it works? I mean, that's what I'm not understanding. I mean, I think if I understand Judge Newman's concerns, I think they're fair ones because you've got to have an opportunity. But my understanding is, and I don't know if I'm right or wrong, is that the board is faced with the choice of denying the motion to amend or granting it. And if it grants the motion to amend, that is the way the system works for all intents and purposes, saying, yes, your amendments are fine, patent issued as amended. Am I right or wrong? That's where I came back to where I began. I think there would be no procedural difference under the way that the patent office conducts these hearings to say, okay, your claim is, your proposed amended will be accepted into the IPR and then in the final written decision to issue an order that says it's not patentable over the prior art that's at issue in the proceeding. There's no difference between that and the level of analysis that occurred in ours, which is- Sorry, so the grant of a motion to amend results in a patent with the amended claim, post-op period? That's not what I'm saying, Your Honor. No, is that true or not true? I believe the way that the patent owner here is suggesting is that would be the case. I would get my claim and it would be entered in post-op. And is that suggestion correct or incorrect? I believe that suggestion is incorrect. So that the board, under some piece of this procedure, can grant a motion to amend and then do some further analysis to say, ah, but the amended claim, which has not itself been the subject of a petition for IPR, is not the subject of examination. Nevertheless, what is rejected? So I want to distinguish between the actual procedure that the patent office will be using in this context and the effect of what occurred here. I do not believe it is the case that if they file their motion to amend and they overcome the burden of showing a narrower claim and a response to the prior art that's at issue in the appeal, that their claim is admitted into the patent and then analysis is performed. So that's full stop there. What actually happened in this case is that the analysis of the motion to amend considered the idea of is it a narrower claim and does it address the underlying prior art rejections, which, again, is then a collusion, an anticipatory rejection, and then a collusion and cicada as an obvious miscombination. We then presented the Allred and the Poncelet reference, which Allred was part of the original file history, and said even if you overcome then a collusion as anticipation or then a collusion as an obvious misreference, adding in the permanently joined feature of Allred still does not get you a new claim. And the patent office, the PTAB, found that. They looked at that and said in light of the art that came in during the procedure that is fully accepted for the motion to amend, you would not have shown a patentable claim over the prior art. The argument from PatentOwner is that they didn't get the opportunity to actually address that issue because the board said, well, you didn't bring us Allred. Well, Ms. Armour started by talking a lot about the concern being with regards to the board's consideration of, the PTAB's consideration of prior art. So that's correct. I mean, the Congress enacted this statute fully aware of the law. That is the presumption we do when Congress enacts new law. They're fully aware of, for example, the grand factors in the John Deere case, which require in an obvious miscontext that the patent owner be able to show that their claims are not obvious over the prior art of record. So in the Idle Free decision and the other PTAB decisions where they've said the record prior art that's at issue in a motion to amend is the underlying rejections in the petition, art that the patent owner is aware of because of original prosecution, or art that the patent owner is aware of because of other matters pending before this office, is an acceptable universe of prior art by which an amendment that would be allowed in a claim without substantive examination would need to occur. And the facts specific in this case are one from original prosecution. The Benacaluja reference and the Allred were known to the patent owner, were part of the substantive record, both in terms of being a part of the underlying trial and the original prosecution, and therefore were an acceptable basis to require demonstrating of both novelty and non-obviousness, which is exactly what the patent office said you didn't do. You did not overcome, for example, the obviousness combination of Benacaluja and the Allred reference. Can I ask you, this turns more or less away from the motion to amend. Did the board find or did you contend that Benacaluja showed a permanently joined top? Do you understand what I mean by top? I do. So the diffusion head mounts to the reservoir. As your last series of questions with Ms. Arner indicated, in Benacaluja, we put forward evidence, and within the record, and it's even cited a little in the PTAB's decision, that it's equally permanently joined as what's described in the specification, the 683. Did you so argue? Honestly, I don't know the answer to the question of did we argue that, but we did present evidence in the declarations below about the tamper-proof ring of Benacaluja when we argued for the anticipation basis for Benacaluja by itself. I see my time is up. Thank you very much. Okay. Let's hear from the patent office. So, Mr. Sheet, if you could just take a moment because you're representing the office, so hopefully we'll get a clear answer. Just background edification on how the process works with respect to the discussion we were having with your friend about the motion to amend and what happens procedurally. You file a motion to amend. If the board rejects the motion to amend, okay, done. If they grant the motion to amend, does that, for all intents and purposes, mean that the amendment has been allowed? That's correct, Your Honor. If the board grants the motion to amend, that claim is added to the patent. So all of the analysis that the board does with respect to evaluating whether the new proposed amendments are patentable is done in the context of whether or not they're going to grant or reject the motion to amend? That's correct. That's very strange. That isn't how I had understood it. I thought the motion to amend could be filed, for example, at the threshold of the proceedings if the statutory requirements of presenting the explanations and the distinctions and why the amended claims are patentable in the viewpoint of the applicant, who, after all, starts out with the presumption that the unamended claims are patentable. That's not the end of the process, is it? Thereafter, if the amended claims replace the initially allowed claims, doesn't then the IPR proceeding go forward on the amended claims? Are you saying it's all over once the motion to amend is granted? I believe that's correct, Judge Newman. Once the motion to amend, there's only one decision. Once the motion to amend is granted or denied, that's the end of the question. There is no iterative process here. There are certain procedural requirements that have to be taken into account that the patent owner has to meet in order to even have their motion to amend considered, but they also have to meet substantive requirements as was put down in Mike Krasofsky's tospicon. And all of that analysis is done in the board's decision on the motion to amend. Did the board, in your view, fully consider on the merits the arguments that the patent owner made in its reply to the petitioner's opposition to the motion to amend? I believe it did, Your Honor. In its reply, ProTec, all it did was it had the opportunity to distinguish over the prior art that was presented in the opposition, right? And the prior art that was presented in the opposition is part of the record. That includes pamphlet. That includes all of it. Instead of distinguishing that prior art, all that the patent owner did here was just to say that, well, that prior art reference, those prior art references in isolation don't teach all of the elements of the claim, but that's not adequate. Not only is it not adequate, it's inconsistent with what we know about what... I think Ms. Arner, if I remember or understood what she said, made a reference to how there were arguments about combining those things, accepting what those new pieces of prior art teach, that there were arguments about combining them so that the paragraph on page 29 of the board's opinion, that's twice the PO reply, addresses only what the patent owner said those pieces of prior art teach, but that paragraph does not address some argument about non-combination. And then when we turn the page to page 30, the paragraph that we've been talking about a fair bit this morning seems to be all about what the motion demonstrated and not what the full set of pleadings on the motion demonstrated. That's, I guess, a concern. The only argument that the patent owner made with regard to this reply was that it was just a conclusory statement that All Reds may not have been analogous art, and that was it. It didn't say anything more than that. I don't think that's a credible argument, with regards to whether it could have been combined or not. More of a, sorry to say, how Solotek could have made that argument here when the board rejected a similar argument, non-analogous art argument with regards to Cicada, which is very similar to All Reds. And furthermore, All Reds was brought into the record initially in the prosecution history of this case where the patent owner cited to All Reds an anticolorated examination request. And when a patent owner... Let me just say, I guess, what I'm focusing on to figure out if the concern is allayed. The paragraph on page 30, the one that contains footnote 9, has several sentences, and that paragraph could be read to say, we are deciding on the basis of what was in the motion to amend, disregarding the pleadings that came afterwards, including the reply. Yet, on page 29, there is discussion of the reply. If the discussion of the reply on page 29 addresses everything that's plausible that was in the reply, then maybe there's actually no material difference between these two things. That's correct, and that's how we read it. I think what the board said on page 30 is being read out of context. I think all that the board was saying there was that a conclusory statement that these references don't teach everything is not sufficient. And here, we know that not only is it not adequate, it's also inaccurate, because we know that All Red and Consulate, perhaps Venicelugia, and perhaps there are other references out there that also teach the limitation that they claim provides patentable distinction. I think that's all that the board was saying there on page 30. From the PTO's perspective, this is a pretty straightforward case. In its attempt to show patentability of its proposed claim, Prolitech rested on the express premise that no one had invented a cartridge having both a diffusion head and a liquid reservoir that are permanently attached. Senter and his opposition reminded Prolitech that he can't really make that argument with any degree of confidence here on this record, because it's clear on this record, which includes All Red and Consulate, and I didn't see counsel for Prolitech disputing that those are part of the record here, that those limitations are taught. In reply, instead of distinguishing over All Red and Venicelugia and Consulate, all that the patent owner did here was to just make conclusory statements as to why perhaps All Red was not analogous. That's not sufficient to meet their burden under the reporting CNS report down to Microsoft 365. So I'm looking at 1126, 1127, which are the appendix, which is the little subsection of your five-page reply on the motion to amend. What in that, and the little subsection that addresses All Red and Consulate, but the rest addresses the other prior part. So what in there did the board not consider in denying the motion to amend? Well, the board, the non-analogous argument, which counsel mentioned on 1127, where the patent owner argued that against the combination of this new reference that has been brought into the record, All Red, that it is non-analogous art. They're not very similar. All Red is a medical device for spraying liquid into a body, just like Cicada is a device for spraying liquid onto a workpiece, and the patent, Venelicugia involves diffusing liquid into the air. They're very different. So to say that the non-analogous art argument is weak is different from saying that the patent office actually considered it and explained. And if they are going to deny a motion to amend, the board was incorrect here to stop. The footnote that they dropped in their opinion said, we recognize that you talk about other elements, but we've already found those elements in different art, and so we're not going to look at those. That is a violation of their duty to consider patentability, and obviousness finding requires looking at the claims as a whole. And I think their error here was, it makes sense because it's a different way looking to prove patentability versus proving unpatentability, which is usually the way the obviousness case works. But starting obviousness from a patentability standpoint... That seems to come back to the burden argument. Sure. And I think on the burden argument, even if the patent owner bore the burden here, and even if the art has to be all art of record, although I think that... And Judge Prost, I think that was your question. The requirement that the Patent Office has now put in an idle free, saying that you have to talk about other art that's not of record, that is what causes exactly the concern you identified, which is claims not being examined when the motion to amend is granted. If the board actually applied the regulation as it's written, that amendments respond to grounds in the trial, which is also cabined by the statutory requirement to have specific grounds in the trial, then that will not happen. But Congress wrote the statute specifically so that we would not have claims that are unexamined. The way the process works is, well, first you have to request permission to even file a motion. The board makes that optional. You have to have a call with the board and request to file a motion. Once they give you permission to file a motion, there is a briefing process. And it makes sense if the motion has to respond to, as the board's regs actually say, the problem that's been identified in the grounds in the trial. And that regulation makes sense if it's applied in that way. The time is up, and we've really gone extensively. If you have one final sentence. I do have one final sentence, and that is that the rules, the way the board has interpreted the requirement under its regulations has been a moving target. In fact, the rules about what the prior art of record means were introduced in an opinion that the Patent Office issued just two weeks ago where they redefined the meaning of prior art of record in idle free. This is a moving target, and we at least deserve a remit. Thank you. We thank all counsel on the cases submitted. Thank you very much.